In the Matter of LOUISIANA INDUS-
TRIAL COATINGS, INC., Debtor
(Bankruptcy No. 80–1371).

LOUISIANA INDUSTRIAL COATINGS,
INC., Plaintiff-Appellant,

v.

BOH BROS. CONSTRUCTION CO.,
INC., Defendant-Appellee.

Civ. A. No. 82–309.

United States District Court,
E.D. Louisiana.

Aug. 12, 1985.

P.J. Stakelum, III, New Orleans, La., Edward James Gaidry, Houma, La., Fred Clegg Strong, New Orleans, La., for Louisiana Industrial Coatings, Inc.

Malcolm W. Monroe, Matt J. Farley, Daniel A. Smith, New Orleans, La., for Boh Bros. Const. Co., Inc.

## MEMORANDUM OPINION AND ORDER

CASSIBRY, Senior District Judge:

Louisiana Industrial Coatings, Inc. ("LIC") appeals from the judgment of the United States Bankruptcy Court for the Eastern District of Louisiana. The case originates from a dispute over the unpaid balances on thirteen industrial painting subcontracts between LIC, the subcontractor, and Boh Bros. Construction Company, Inc. ("Boh"), the prime contractor. The bankruptcy court denied the claims of LIC and its purported assignee, the Bank of St. Charles and Trust Company ("Bank"), and allowed the counterclaim of Boh in the amount of $92,345 as an unsecured nonpriority claim in bankruptcy. Having reviewed the entire record in this case and the applicable law, I amend the judgment in one respect and affirm in all others.

### I.

On September 4, 1980, LIC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. LIC, as debtor in possession, then filed thirteen separate actions in the bankruptcy court to recover payments from Boh for work performed pursuant to thirteen subcontracts. The Bank joined the litigation asserting its claim as assignee of LIC's accounts receivable. Boh denied that any funds were due either LIC or the Bank and filed a counterclaim for amounts expended to complete four of the subcontracts.

The facts of this case are largely undisputed. At the time the bankruptcy petition was filed, LIC had completed eight of the thirteen subcontracts. In late August, 1980, just prior to the filing of the petition, LIC stopped work on the remaining five subcontracts. LIC admits that it breached four of these subcontracts, but denies having breached the fifth, entitled the LOOP–Clovelly Electrial Substation subcontract, claiming that Boh breached in the first instance. The bulk of the testimony at trial centered on the LOOP–Clovelly subcontract, the sole factual dispute in this case.

As the prime contractor, Boh was required to complete the five unfinished subcontracts. Boh could complete one of the subcontracts for an amount equal to the outstanding contract price. However, each of the other four subcontracts could only be completed at a cost which exceeded the outstanding contract price for a total loss to Boh of $163,229. This amount was stipulated as were the amounts billed and unpaid to LIC for work completed on the thirteen subcontracts.

Finding that LIC had substantially breached the five uncompleted subcontracts, including the LOOP–Clovelly subcontract, the bankruptcy court held that Boh owed LIC nothing on these subcontracts. Furthermore, the court interpreted the thirteen identical subcontracts as permitting Boh to recoup its losses on the uncompleted subcontracts from funds which would otherwise be due LIC on the completed subcontracts. Because Boh's losses exceeded the unpaid balances on the completed subcontracts, the court concluded that no debt was owed LIC and dismissed LIC's claims for payment as well as the Bank's.[1] Finally, the court granted

---

1. The bankruptcy court made no finding as to the validity of the assignment to the Bank of LIC's accounts receivable, but rather held that, assuming a valid assignment, the Bank could

Boh's counterclaim for its total excess loss on the uncompleted subcontracts minus the unpaid balances on the completed subcontracts plus the one subcontract completed by Boh without a loss.

On appeal, LIC asserts that the bankruptcy court erred in two respects: (1) the court failed to construe the subcontracts properly; and (2) the court failed to consider the effect of section 553 of the Bankruptcy Code on Boh's ability to recoup its losses.[2] Based on these alleged errors, LIC requests that the decision of the bankruptcy court be reversed and judgment entered in its favor and against Boh for $70,-884 plus costs. The sum of $70,884 represents the unpaid balances on the completed subcontracts and on the one uncompleted subcontract which Boh finished without a loss.

## II.

The first question presented on appeal is the proper standard of review to be applied to the findings of the bankruptcy court. LIC contends that the court's decision is not entitled to the deference afforded by the clearly erroneous standard of review, but rather should be treated merely as the argument of counsel. LIC's contention is based on the court's verbatim adoption of Boh's proposed findings of fact and conclusions of law.

■ LIC's argument on this score has been settled recently by the United States Supreme Court. *See Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In *Anderson*, the Supreme Court held that the findings of a trial judge may be reversed only if clearly erroneous even if the judge adopts proposed findings of the prevailing party verbatim. 105 S.Ct. at 1511. Although the Court was interpreting Rule 52 of the Federal Rules of Civil Procedure, its conclusion applies equally here. Rule 8013 of the

Bankruptcy Rules of Practice and Procedure mandates the application of the clearly erroneous standard of review to a bankruptcy court's findings. The rule tracks the language of Rule 52, and clearly accords the same deference and weight to the factual findings of a bankruptcy judge as that accorded to those of a district judge. *See* Bank.R.Prac. & P. 8013 advisory committee note (West 1984).

## III.

Having determined the appropriate standard of review, I turn to LIC's argument that the bankruptcy court failed to construe properly the subcontracts at issue in this case. The bankruptcy court held that under paragraph ten of each of the identical subcontracts, Boh was entitled to apply its losses on the uncompleted subcontracts against the unpaid balances on the completed subcontracts. Paragraph ten provides as follows:

> Should Subcontractor at any time refuse or neglect to supply a sufficient number of properly qualified workmen or a sufficient quantity of materials of proper quality, or abandon the work or fail in any respect to prosecute the work covered by this contract with promptness and diligence, or fail in the performance of any of the agreements herein contained, Contractor may, at its option, after forty-eight (48) hours notice to Subcontractor, provide any such labor and materials and deduct the cost thereof from any money then due or thereafter to become due to Subcontractor under this contract or otherwise; or Contractor may, at its option, terminate this contract and, for the purposes of completing the work covered by this contract, Contractor shall have the right to take possession of all the materials, tools and appliances belonging to Subcontractor at the site of the work, and Contractor may either complete said work itself or may employ, or contract

---

have no greater rights than its assignor. The Bank has not appealed from the court's decision.

**2.** In its first appellate brief, LIC merely reurges verbatim its arguments before the bankruptcy court without specifying any error. My holding in this appeal effectively disposes of these arguments.

with, any other person or persons to complete the work and provide the materials therefor; and in case of such termination of this contract, Subcontractor shall not be entitled to receive any further payment under this contract until said work shall have been finished completely and payment therefor made by Owner, at which time if the unpaid portion of the amount to be paid under this contract exceeds the charges, expenses and damages sustained by the Contractor in completing the work or as a result of such default, such excess shall be paid by Contractor to Subcontractor, but if such charges, expenses and damages shall exceed said unpaid portion, Subcontractor shall pay the difference to Contractor.

LIC assigns two errors to the bankruptcy court's holding under this provision of the subcontracts: (1) the court overlooked the notice requirement in reaching its conclusion; and (2) the court confused the two separate and inconsistent remedies provided for in paragraph ten and ignored Boh's election of the second. Each of these contentions are discussed in turn.

### A.

LIC asserts that Boh is not entitled to any benefit of "setoff" under paragraph ten because it failed to give the requisite forty-eight hours notice before hiring others to complete the work abandoned by LIC. LIC faults the bankruptcy court for failing to make a specific finding on this issue. Although the lack of such a finding is regrettable, it is not fatal in this case for the following reasons.

■ First, with regard to the LOOP–Clovelly subcontract, a finding as to notice is implicit in the court's determination of which party breached in the first instance. At trial, LIC argued that Boh breached the subcontract first because it hired another subcontractor without giving the requisite forty-eight hours notice to put LIC in default. The bankruptcy court clearly rejected this argument by finding that LIC, and not Boh, breached the agreement. This finding is not clearly erroneous. Further-

more, the evidence indicates that Boh gave LIC sufficient notice. The terms of the subcontract simply require forty-eight hours notice without specifying the type or manner of notice. The testimony at trial established that Boh repeatedly complained to LIC about its unsatisfactory progress on the LOOP–Clovelly job. These repeated verbal complaints constituted adequate notice under the subcontract.

■ Second, with regard to the other uncompleted subcontracts, no notice was required. LIC fully admits that it defaulted on these subcontracts when it abandoned the work prior to filing for bankruptcy. By its actions, LIC, in effect, gave notice of default to Boh. Thus, the giving of notice by Boh would have been inconsequential. Neither the contract nor the law required Boh to make such a useless gesture. *See Sollay v. Sollay Foundation & Drilling,* 389 So.2d 834, 839 (La.App. 3d Cir.1980); *see also Fox v. Doll,* 221 La. 427, 59 So.2d 443, 445 (1952) ("[I]t is not necessary to put one formally in default who refuses to perform or who acknowledges an inability to perform.")

### B.

LIC begins its next argument with the observation that paragraph ten of the subcontracts furnishes the contractor with two alternative remedies in the event of the subcontractor's default. First, the contractor may provide any necessary labor and materials to complete the work and deduct the expenses incurred from the amounts due the subcontractor under "this contract *or otherwise.*" (Emphasis added.) Alternatively, the contractor may terminate the contract, take possession of the subcontractor's materials at the work site, and complete the work itself or hire a third party to do so. In choosing to terminate the contract, the contractor is required to pay the subcontractor only to the extent that the "unpaid portion of the amount to be paid under this contract exceeds the charges, expenses and damages sustained by the Contractor in completing the work or as a result of such default."

Stressing that any ambiguity must be construed against Boh as drafter of the subcontracts, LIC argues that Boh elected the second option. The significance of this, according to LIC, is that the second option lacks the "or otherwise" language found in the first option. It is this language which forms the basis for Boh's right to deduct the unpaid balances on *all* the subcontracts from its total completion costs. Thus, LIC reasons that, having chosen the second option, Boh is entitled to offset its expenses on a particular subcontract against amounts due on that subcontract, but is not entitled to do so with respect to other subcontracts as the bankruptcy court permitted.

■ LIC's "election of remedies" argument appears for the first time on appeal. An issue so raised is not reviewable unless it involves a pure legal question and the refusal to consider it will produce a miscarriage of justice. *Matter of Johnson*, 724 F.2d 1138, 1140 (5th Cir.1984). LIC's argument presents both questions of fact and law. Furthermore, I am unconvinced that in this case a miscarriage of justice will result from giving the argument short shrift on appeal.

■ Leaving aside any questions of contractual interpretation, the record is unclear that Boh did indeed choose to proceed under the second option. LIC contends that Boh's election of remedies is evidenced by the fact it hired a third party to complete the work abandoned by LIC. Such remedial action, argues LIC in its second appellate brief to this court, is impermissible under the first option which only permits Boh to provide "labor and materials." Ignoring once again issues of contractual interpretation, LIC's argument is clearly

inconsistent with its previous position on this issue. In its first appellate brief and in its trial memorandum to the bankruptcy court, LIC concedes that under option one of paragraph ten, Boh had the right to retain a third party subcontractor. In construing rights and remedies under a contract, such a concession may be taken as a definite statement of the parties' contractual intent. In any event, LIC's belated and inconsistent arguments on this point do not merit further or more extensive review.

## IV.

■ LIC's final assignment of error is that the bankruptcy court failed to consider section 553 of the Bankruptcy Code in its decision allowing Boh to apply its completion costs against the unpaid balances on the subcontracts. LIC argues, for the first time on appeal, that section 553 actually prohibits the result reached by the bankruptcy court.[3] LIC's silence on this issue until this point in the proceedings is especially noteworthy in light of the fact that Boh, in its post-trial memorandum to the bankruptcy court, specifically states that section 553 is inapplicable to the facts of this case. The bankruptcy court evidently agreed with Boh, and so do I.

Section 553 contemplates a setoff of mutual debts between the debtor in bankruptcy and a creditor, and enumerates certain specific exceptions to the creditor's right of setoff. Generally, under section 553, setoff involves claims arising out of different transactions. In this case, Boh has not asserted a right to setoff, but rather has interposed a defense and counterclaim which arise out of the same transaction as LIC's claim for payment.[4] The "or other-

---

**3.** A close review of the record reveals that section 553 is mentioned in LIC's complaints: "The debts sought to be recovered [by LIC] are not subject to any valid setoffs as recognized under the provisions of 11 U.S.C. § 553 and applicable Louisiana law." This is not the argument LIC is making now.

**4.** Section 553 is not intended to apply to the adjustment of claims and counterclaims arising out of the same transaction.

Certainly in any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to former Section 68, or to section 553(a).

wise" language of paragraph ten unambiguously requires consideration of any payments to LIC in the context of the entire relationship between the parties and not on a contract-by-contract basis. Thus, the issue in this case is not one of the setoff of mutual debts, but rather whether, under the terms of the subcontracts, Boh owed LIC any payments. No debt exists in favor of LIC on the uncompleted subcontracts because it breached them.[5] No debt exists in favor of LIC on the completed subcontracts because the unpaid amounts for the work performed were less than the recoverable completion costs incurred by Boh. In sum, this is simply not a case of mutual debts arising out of different transactions, and the dictates and prescriptions of section 553 of the Bankruptcy Code are inapposite.

 LIC also asserts that Boh is not entitled to recover its counterclaim because the amounts stipulated as necessary to complete the subcontracts were not incurred by Boh prior to the date the bankruptcy petition was filed. Thus, LIC argues that Boh is asserting post-petition claims against pre-petition debts. There is no merit in this argument. Boh's claim of liability against LIC arose when the subcontracts were breached prior to the filing of the petition. It is a general principle of bankruptcy law that a pre-petition claim which is unliquidated on the date the petition is filed is still a pre-petition claim. *See Matter of Braniff Airways, Inc.*, 42 B.R. 443, 451 (Bankr.N.D.Tex.1984).

### V.

 I conclude that the bankruptcy court properly dismissed LIC's claims for payment as well as the Bank's. The Bank, as the purported assignee of LIC's accounts receivable, acquires no greater rights than its assignor has under the subcontracts, and any legal defenses which can be set up against the latter are available against the former. *Dugas v. Lewis-Chambers Const. Co., Inc.*, 185 So. 59, 64 (La.Ct.App.1938). Finding that LIC substantially breached the five uncompleted subcontracts, the bankruptcy court excused Boh from its obligation to pay under these subcontracts. I affirm this finding and conclusion as neither clearly erroneous nor legally incorrect. I further affirm the court's interpretation of the subcontracts which permitted Boh to apply its losses on the uncompleted subcontracts against the balance due on the completed subcontracts. Finally, I uphold the bankruptcy court's decision to allow Boh's counterclaim as a nonsecured nonpriority claim in bankruptcy. However, I disagree with the court's method of calculation and the resulting amount.

The bankruptcy court held that "LIC is indebted to Boh in the amount of $92,345 representing the difference between Boh's total excess loss on the four subcontracts completed by Boh at a loss of $163,229, less the amounts billed and unpaid on the completed subcontracts and purchase orders *and on the uncompleted subcontract completed by Boh without a loss.*" (Emphasis added.) The court erred by adding the unpaid balance on the uncompleted subcontract to the balance remaining on the completed subcontracts. The court held, and I affirm, that Boh owes LIC nothing on any of the uncompleted subcontracts. Therefore, the amount owed on the one uncompleted subcontract which Boh finished without a loss should have been credited to Boh's account, rather than added to the debit side of the equation. Boh is entitled to recover the amount expended in excess of the incompleted subcontract prices, or $163,229, minus the amounts due

---

4 L. King, Collier on Bankruptcy ¶ 553.03 (15th ed.1985).

**5.** Under Louisiana law, where one party substantially breaches a contract, the other party to it has a defense and an excuse for nonperformance. *Olympic Ins. Co. v. H.D. Harrison, Inc.*,

463 F.2d 1049, 1053 (5th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1373, 35 L.Ed.2d 593 (1973). It should be noted that LIC has never asserted a claim or proof of substantial performance with regard to the unfinished subcontracts.

on the completed subcontracts, or $56,-858.08; for a total of $106,370.92.

The Clerk of the Court is hereby ordered to enter an amended judgment allowing Boh's counterclaim against LIC in the amount of $106,370.92 and affirming the bankruptcy court in all other respects.