### In re RUMSEY SHEET METAL, INC., Debtor.

### Robert WAGNER, As Trustee in Bankruptcy for Rumsey Sheet Metal, Inc., Plaintiff,

### v.

### J & K PLUMBING & HEATING CO., INC., Defendant.

### Bankruptcy Nos. 84–20361, 86–2023A.

United States Bankruptcy Court, W.D. New York.

Feb. 13, 1987.

5. Unfortunately, the testimony was not specific as to the eyewear industry.

Lacy, Katzen, Ryen & Mittleman by David L. Rasmussen, Rochester, N.Y., for plaintiff.

Twining, Nemia, Hill & Steflik by Jeffrey A. Tait, Binghamton, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

Heretofore, Robert Wagner, trustee in bankruptcy for Rumsey Sheet Metal, Inc., (Rumsey) moved this Court for partial summary judgment. The parties submitted briefs, exhibits and other products of pre-trial discovery including the depositions of Mr. Richard Rumsey, a principal of the debtor corporation, and Mr. John Trait, a principal of the defendant corporation. Oral arguments were heard on October 6, 1986 and the parties each submitted a post-hearing memorandum of law. Upon consideration of all the foregoing, the Court finds that there are triable issues of fact which require an evidentiary hearing.

This adversary proceeding involves a contractual dispute between the parties stemming from two construction projects let out by the State. The defendant, J & K Plumbing and Heating (J & K), acted as the general contractor on both construction projects. The debtor, Rumsey, acted as a subcontractor. The first of the two projects (the Mess Hall Project) involved renovation of a dining hall at the Elmira, New York, Correctional Facility. The second project involved construction of a dormitory (the Special Housing Unit Project) at the same correctional facility.

The parties contracted for Rumsey to perform work on the Mess Hall Project at a price of $113,500. It is undisputed that Rumsey did not fully perform its obligations on the Mess Hall Project. Accordingly, Rumsey billed J & K for only $99,600 of the total contract price. Of the amount billed, J & K paid Rumsey $78,000 and then completed, or caused to be completed, the work which Rumsey had failed to perform.

The parties contracted for Rumsey to perform work on the Special Housing Unit Project at a price of $25,000. The Special Housing Unit Project was completed by Rumsey and, after an offset of $1,006 was allowed, $17,493 of the total contract price

remained unpaid. It is undisputed that the State of New York has asserted a warranty claim against J & K in connection with labor performed by Rumsey on the Special Housing Unit Project. It is also undisputed that Rumsey warranted its performance to J & K against defective labor. J & K has alleged that the cost of correcting the defects will reach $13,280 and that this amount, plus back charges J & K is owed on the Mess Hall Project, will offset any amount which may be due Rumsey.

Although the parties are in disagreement on several key issues, the trustee offers three arguments to support this motion for partial summary judgment. First, it is argued that § 220–a of the New York Labor Law requires the contract for the Mess Hall Project and the contract for the Special Housing Unit Project to be treated separately. Accordingly, since the Special Housing Unit Project was completed by Rumsey, the full contract price of $25,000 must be paid. Leaving aside any offset to which J & K may be entitled on the Special Housing Unit Project, the trustee's argument fails because it misconceives the purpose for which § 220–a requires the separate treatment of State construction contracts.

Sections 220–a and 220–b of the New York Labor Law safeguard the payment of laborers' wages. Section 220–a requires as a condition precedent to the release of funds on State construction contracts that,

> the contractor and each and every subcontractor of the contractor ... file a statement in writing ... certifying to the amounts then due and owing from such contractor or subcontractor filing such statement to or on behalf of any and all laborers for daily and weekly wages or supplements on account of labor performed upon the work under the contract....

N.Y.Lab.Law § 220–a (McKinney 1983).

In addition to the wage statement required by § 220–a on each contract, contractors must submit an affidavit regarding the payment of wages which, as filed by J & K, states,

> [t]hat *should there be amounts due and owing from such subcontractor to any laborer* for ... wages or supplements on account of labor performed upon the work under this contract ... *the [contractor] shall pay all such wages* and supplements....* (emphasis added).

Affidavit, annexed to debtor's motion, at paragraph 6.

█ Section 220–b of the Labor Law authorizes the filing of wage complaints by laborers. Pursuant to the filing of a § 220–b wage complaint, money owed by the State to contractors or subcontractors may be withheld provided that the wage complaint is corroborated by the § 220–a wage statement. If the complaint is corroborated, wages may be paid out of the funds withheld. From this statutory scheme, it is apparent that the purpose of §§ 220–a and 220–b of the Labor Law is to safeguard the payment of laborers on *each* construction project let out by the State. Accordingly, the trustee's key assertion that under § 220–a "full payment had to have been made by [the contractor] *to subcontractors* on any completed job in order to receive payment from the State," (emphasis added) is without sound legal basis. Because § 220–a is designed exclusively to promote the payment of laborers, and is unrelated to the resolution of disputes between contractors and subcontractors, the parties should be left to their contractual rights and remedies, including the right to setoff mutual debts, under the common law.

The trustee next argues that this motion for partial summary judgment should be granted to the extent that J & K used its post-petition indebtedness to setoff pre-petition claims it held against Rumsey. Rumsey filed its petition for relief pursuant to Chapter 11 on March 30, 1984. It is alleged that $500, invoiced by Rumsey on May 11, 1984, was used by J & K to offset pre-petition claims. The trustee asserts that § 553 of the Code prohibits setoff of this type.

Section 553(a) prescribes three elements that are predicate to a creditor's setoff right in bankruptcy:

1. A pre-petition debt owed by the creditor to the debtor;

2. A pre-petition claim of the creditor against the debtor; and

3. A mutuality of the pre-petition debt and claim.

*In re Morristown Lincoln-Mercury, Inc.,* 42 B.R. 413 (Bkrtcy.E.D.Tenn.1984). Here it is alleged that $500 of the amount setoff by J & K first became a debt owed to Rumsey in the post-petition period. Accordingly, element one as set out above is not satisfied and setoff of the creditor's claims against this debt should not be allowed.

■ Assuming the allegation to be true, all that is clear is that $500 was invoiced by, and became due to, Rumsey in the post-petition period. J & K argues that this obligation, invoiced post-petition, had accrued in the pre-petition period. If the latter be proven, then § 553 would not bar J & K from setting off its claims against this debt. As one Court recently remarked, "§ 553 does not prohibit setoff of a creditor's claim arising pre-petition, unliquidated or unmatured as of the petition date, against a debtor's pre-petition claim." *Matter of Louisiana Indus. Coatings Inc.,* 53 B.R. 464 (E.D.La.1985) (citation omitted). At the very least, it is clear that a genuine issue of fact remains as to when the $500 first became an indebtedness of J & K.

■ Finally, the trustee argues that any setoff accomplished in the 90 day period prior to the filing of the petition, which improved the position of J & K in relation to other creditors, is barred by § 553(b) of the Code. To have improved its position within the meaning of § 553(b), J & K would have to be owed less after effecting setoff during the ninety day pre-petition period than it was owed on the ninetieth day prior to bankruptcy. Here, it cannot be determined whether such an improvement in position occurred. Facts have been developed which reveal that as J & K became indebted to Rumsey for services rendered during the ninety day pre-petition period, so too did Rumsey become indebted to J & K by failing to provide services for which it had contracted. If the amount becoming an indebtedness to J & K exceeded the amount becoming an indebtedness to Rumsey during the critical period, then J & K would not be in violation of § 553(b) even if its acts did constitute setoff. Only if the net claim of J & K was less after effecting setoff during the ninety day pre-petition period than it was on the ninetieth day prior to bankruptcy would an impermissible improvement in position have taken place.

For the reasons set out above, this Court denies the trustee's Motion for partial summary judgment.