In re The MONETARY GROUP, the Securities Groups, the Securities Group 1980, the Securities Group, Debtors.

Randall W. ATKINS, et al., Appellants,

v.

Louis LOWIN, etc., et al., Appellees.

Nos. 84–428–BK–J–GP, 84–430–BK–J–GP to 84–433–BK–J–GP, 87–572–Civ–J–12 to 87–575–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 26, 1988.

Guy R. Fairstein, New York City, for appellants.

George E. Ridge, Jacksonville, Fla., for Lowin.

Haywood M. Ball, Jacksonville, Fla., and Cory E. Friedman, New York City, for appellee The Equitable Life.

## ORDER AFFIRMING BANKRUPTCY COURT RULING

MELTON, District Judge.

This cause is before the Court in the form of consolidated appeals of an order of the United States Bankruptcy Court for the Middle District of Florida, dated May 22, 1987, overruling appellants' objections to the agreement of compromise and settlement of claims of appellee The Equitable Life Assurance Society of the United States ("The Equitable") against the debtors' estates. The Bankruptcy Court considered the cases in consolidated fashion and issued a single set of findings of fact and conclusions of law regarding the objections. After deliberation and consideration of the briefs filed in these matters, the records on appeal, and the oral arguments of counsel, the Court finds that the order of the Bankruptcy Court should be affirmed.

The underlying subject matter of these appeals is a lease entered into between The Equitable and debtor The Securities Groups.[1] Because a significant period of time remained on the lease when the debtors filed their bankruptcy petitions in 1984, The Equitable submitted a claim for prepetition arrearages in rent and postpetition damages, both governed by 11 U.S.C. § 502(b)(6). The Bankruptcy Court's findings of fact concerning the lease and subsequent events are not in dispute, and they are reported at 73 B.R. 630, 631–32 (Bankr. M.D.Fla.1987). The Equitable negotiated with appellee Louis Lowin ("Lowin"), then Chapter 11 Trustee, now Post–Confirmation Administrator of the debtors' estates, to produce the agreement of compromise and settlement of claims (hereinafter "settlement agreement"). By the terms of the settlement agreement, The Equitable reduced its claims in each of the estates to $3,529,114.39 and acknowledged that the payment of that sum would constitute full payment of all of its claims. *Id.* at 632. Lowin also obtained a waiver from The Equitable of its administrative claim, which would have required a cash payout of more than $800,000 at the time of confirmation of the plan in bankruptcy. The administrative claim exceeded the cash on hand at confirmation and the waiver of it made confirmation of the plan possible. *Id.* at 635.

Appellants challenge the amount of the settlement. They assert that it exceeds the maximum permitted by § 502(b)(6). Appellees posit that this argument was not presented to the Bankruptcy Court and

---

**1.** Debtors The Monetary Group, The Securities Group 1980, and The Securities Group are general partners of The Securities Groups, a New York general partnership.

therefore it has not been preserved for appeal. In addition, appellees defend the permissibility of the settlement amount pursuant to § 502(b)(6). The Court will first address the waiver issue.

When appellants filed their Objections to the Settlement, they raised an objection to the amount as excessive. *Id.* at 632. As framed at that time, however, appellants' argument concerned The Equitable's failure to mitigate damages. The Bankruptcy Court extensively analyzed the issue of mitigation, based on the evidence presented at a hearing in that court, *see id.* at 631–34, and concluded "that The Equitable acted reasonably under the circumstances to mitigate its damages and is entitled to its full claim as limited by 11 U.S.C. § 502(b)(6)." *Id.* at 634. The appellants' Objections to the Settlement are silent on the question of the interpretation of § 502(b)(6).

Appellants urge the Court to review the application of § 502(b)(6) purely as a matter of law as applied to the evidence in the record. Appellants rely upon "the district court's power to consider any issue presented by the record even if the issue was not presented to the bankruptcy court." *In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1379 (9th Cir.1985); *see In re Walsh Constr., Inc.,* 669 F.2d 1325, 1329 (9th Cir.1982). Appellants reliance upon this principle, however, oversimplifies the prerequisites which must be met before this Court exercises its discretion to bypass the expertise of the Bankruptcy Court.

■ It is within this Court's discretion to resolve an issue not decided in the Bankruptcy Court if the record thoroughly presents the issue. *In re Air Conditioning, Inc. of Stuart,* 845 F.2d 293, 299 (11th Cir.1988) (citing *Pizza of Hawaii*); *In re Kenitra, Inc.,* 64 B.R. 841, 842 (Bankr. 9th Cir.1986). In contrast, if the record reflects an issue was presented in a cursory manner and never properly presented to the Bankruptcy Court, the issue is not preserved for appeal. *In re Espino,* 806 F.2d 1001, 1002 (11th Cir.1986); *accord Air Conditioning, Inc.,* 845 F.2d at 299; *In re Runyan,* 832 F.2d 58, 60 (5th Cir.1987); *Johnson v. Fairco Corp.,* 61 B.R. 317, 320

(N.D.Ill.1986). In other words, it is not enough that the record provides facts which may permit the resolution of an issue; rather, the record must be adequately developed, to the point that the Bankruptcy Court could have passed on the issue, even though that court declined to do so.

The factual situation in *Espino* highlights the waiver issue based on an inadequate record and accordingly the case merits discussion. The Bankruptcy Court did not address the issue of whether to deny discharge to the debtors on the ground that they destroyed personal records. The Bankruptcy Court did, however, make a finding on the lack of corporate financial records. Although evidence of the lack of personal records was introduced, this occurred in the context of a different argument to the bankruptcy court. 806 F.2d at 1002 n. 2. Accordingly, the court of appeals concluded, "careful review of the record reveals that the lack of personal records issue was presented in a cursory manner. Thus, the issue of the lack of *personal* records as a basis to deny discharge was never properly presented to the bankruptcy court and was not preserved for appeal." *Id.* at 1002 (emphasis in original).

■ The circumstances of this appeal compare closely to *Espino.* Appellants sought to elicit many factual predicates for their legal argument during the Bankruptcy Court's hearing. However, it appeared that the facts were being developed in support of the argument concerning failure to mitigate damages which was raised in the Objections to the Settlement. The Bankruptcy Court considered and made findings on mitigation in response to the apparent thrust of appellants' objection. Notably, the Bankruptcy Court perceived that appellants "devoted their entire case in chief to an attempt to: 1) impeach the Trustee's investigation of the advisability of the settlement; and 2) impeach The Equitable's claim. *No affirmative evidence of any realistic alternative was offered."* 73 B.R. at 635 (emphasis added). This Court confidently concludes that appellants presented the § 502(b)(6) issue, if at all, in

such a cursory manner that this appeal does not warrant the exercise of the Court's discretion to resolve the issue now.

Appellants finally retreat to reliance upon their Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") as proof that the § 502(b)(6) was squarely presented to the Bankruptcy Court. In order to have a complete record on appeal, this Court permitted the filing of the Proposed Findings while reserving the question of what weight, if any, to give to them. *See* Order [Granting Motion to Supplement Record], dated May 27, 1988. Upon reflection, the Court finds that the inclusion of the § 502(b)(6) issue in the Proposed Findings did not preserve the issue for appeal.

Defining the nature of proposed orders is necessary. Courts solicit proposed orders to assist in the summarization and definition of matters presented to them. However, "[t]he proposed order or opinion serves as an additional opportunity for a party to brief and argue its case and thus is unfair to the party not accorded an opportunity to respond." *In re Colony Square*, 819 F.2d 272, 275 (11th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988).[2] Thus, a proposed order is akin to a reply brief. If an argument is raised for the first time in a reply brief, then an opposing party effectively loses the opportunity to respond. For this reason, review of such issues is normally forfeited on appeal. *See MortgageAmerica Corp. v. Bache Halsey Stuart Shields, Inc.,* 789 F.2d 1146, 1149–50 (5th Cir.1986) (appellant waived review of issues which were specified but unargued in initial brief but were raised anew and argued in reply brief). In the Ninth Circuit, an issue raised for the first time in a reply brief has been reviewed under the *Pizza of Hawaii* standard, *see In re Baldwin,* 70 B.R. 612, 617 (Bankr. 9th Cir.1987), which suggests that the mention of an issue in a reply brief does not contribute to the preservation of an issue for appeal. The Court perceives

that the same conclusion is appropriate for an issue raised for the first time in a proposed order.

Appellant's Proposed Findings presented the § 502(b)(6) issue to the Bankruptcy Court, but the timing clearly reflects the unfairness of treating the issue as properly preserved for appeal. Prior to the hearing in the Bankruptcy Court appellees had notice only of certain other objections to the settlement agreement, and they presented evidence to rebut the claims embodied in those objections. Appellants presented no evidence of their own which might have suggested the issue. Appellants' cross-examination of the witnesses at the hearing rarely touched on the subject of § 502(b)(6), and, when it did, the context does not suggest the argument raised in this appeal. Thus, not until the submission of evidence was closed did appellants raise the issue. Appellees belated attempt to place Seth H. Agata's affidavit before this Court illustrates the frustration of the judicial process that appellants have inflicted. "Bankruptcy cases are to be tried in bankruptcy court." *Air Conditioning, Inc.,* 845 F.2d at 298. Had the issue been properly developed in the Bankruptcy Court at a stage when appellees could have responded with evidence and argument directed to the issue, the record would reflect calculations by both sides and review of those calculations by the bankruptcy judge. This appeal is not in that posture; appellants bear responsibility for this situation.

The inquiry is not finally closed upon finding that appellants waived the § 502(b)(6) issue. To the extent that an issue was not preserved for appeal in the Bankruptcy Court, it may be reviewed "if it involves a pure question of law and if refusal to consider it would result in a miscarriage of justice...." *Id.* at 298; *In re Louisiana Indus. Coatings, Inc.,* 53 B.R. 464, 469 (E.D.La.1985). This civil version of the plain error rule does not shelter

---

**2.** The *Colony Square* court sternly chastised a bankruptcy judge for adopting verbatim an *ex parte* proposed order and opinion. Although the parties here were well aware of the proposed orders, appellants effectively urged the

Bankruptcy Court to commit the sins of *Colony Square* by adopting a method for resolving the case which had not been subjected to the adversarial process.

appellants for two reasons. First, appellants' argument for review calls upon the Court to set aside the Bankruptcy Court's conclusion that The Equitable reasonably mitigated its damages under the circumstances.[3] Under New York law, the reasonableness of mitigation is a question of fact. *See, e.g., Tynan Incinerator Co. v. International Fidelity Ins. Co.,* 117 A.D. 2d 796, 499 N.Y.S.2d 118, 120 (2d Dep't 1986) (citing *Losei Realty Corp. v. City of New York,* 254 N.Y. 41, 171 N.E. 899). An argument which presents both questions of fact and law does not qualify for extraordinary review. *Louisiana Indus. Coatings,* 53 B.R. at 469.

██ Moreover, the Court cannot say that refusal to employ extraordinary review would result in a miscarriage of justice. "[T]hat power will only be exercised in exceptional cases." *Delancey v. Moticheck Towing Serv., Inc.,* 427 F.2d 897, 901 (5th Cir.1970). This case is not of that magnitude. If the Court accepted appellants' § 502(b)(6) argument wholesale, and it does not,[4] then the settlement agreement

approved by the Bankruptcy Court exceeds the statutory maximum by $810,120.80. However, the settlement agreement saved litigation expenses and obtained a waiver of an administrative claim for $890,915.20, which would have been payable at the time of plan confirmation and was not limited by § 502(b)(6), *see In re Multech,* 47 B.R. 747, 751 (Bankr.N.D.Iowa 1985). Moreover, the Bankruptcy Court found that waiver of the administrative claim made confirmation of the plan possible. The value to the estates of removing such a significant impediment to plan confirmation certainly exceeds the price tag associated with the impediment. Thus the benefits conferred by the settlement agreement were substantial and compensate for the degree to which appellants allege the settlement figure exceeds the statutory maximum.

The purpose of § 502(b)(6) is to confine the landlord's claim to a reasonable amount that will not prevent general unsecured creditors from recovering a dividend from the estate. *See id.* (quoting House and Senate Reports). The Court is of the opin-

---

**3.** Appellants never directly urge the Court to set aside the Bankruptcy Court's finding. However, they proffer a method for calculating damages pursuant to § 502(b)(6) that reduces The Equitable's damages for actions, such as rent abatement, which the Bankruptcy Court found to be commercially reasonable actions taken in mitigation. Appellants offer no legal authority for the proposition that commercially reasonable actions taken in mitigation must be charged against a lessor for the purpose of calculating maximum damages pursuant to § 502(b)(6).

**4.** Appellants propose, with scant legal authority, that the damages cap of § 502(b)(6)(A) limits The Equitable's claim to damages which could be proved for the first year following the date of the petition or the surrender of the property. This argument overlooks the apparent scheme of the statute. Section 502(b)(6) is a cap on maximum permissible damages which may be awarded. "[I]n all events, the burden is on the landlord to show damages resulting from the termination of the lease. Upon such showing, the landlord's allowable claim is limited to the formula described in section 502(b)(6)(A)...." 3 *Collier on Bankruptcy* ¶ 502.02[7], at 502–61 (15th ed. 1979 & 1988). The key to the interpretation of the section is calculation of the total damages suffered for the remaining term of the lease, not simply the damages suffered in the short term following a bankrupt's ejection from or surrender of the premises. Thus, if the land-

lord takes all commercially reasonable steps in mitigation of damages and still suffers damages over the remaining term of the lease in excess of the amount permitted under § 502(b)(6), then the full amount authorized by the statute may be claimed. This conclusion is apparent from the language of the statute, which refers to an amount equal to "the rent reserved by [the] lease, without acceleration" for a maximum specified term.

The Bankruptcy Court followed this methodology, as evidenced by its determination that The Equitable was "entitled to its full claim *as limited by* 11 U.S.C. § 502(b)(6)." 73 B.R. at 634 (emphasis added). Implicit in the Bankruptcy Court's ruling are findings of fact that The Equitable's full claim exceeded the rent reserved for one year and that the settlement figure was equal to or lower than the later figure. Appellants concede these facts in their Proposed Findings, in which they recognize that The Equitable's postpetition rent loss approximates $15 million, of which approximately $9.5 million has been replaced by new tenants. Proposed Findings ¶ 29. Even if the Court overruled the Bankruptcy Court's finding on mitigation and adopted appellants' proposed deductions, The Equitable's loss approximates $4.5 million. *Id.* ¶ 30. The settlement agreement does not exceed this lesser figure, hence it is within the maximum permitted by § 502(b)(6)(A).

ion that the settlement agreement effectuates the statute's purpose, even if it exceeds the statutory maximum amount as calculated by appellants, because the overall total of assets in the estates tied up by the settlement of The Equitable's claims is not significantly different from the amount which would have been committed to payment of the claims following litigation by The Equitable.[5]  The Court cannot say that this case, if appellant's arguments are accepted as true, presents a miscarriage of justice to the degree necessary to justify extraordinary review.  *Cf. Liner v. J.B. Talley & Co.*, 618 F.2d 327, 329–30 (5th Cir.1980).  Accordingly, it is

ORDERED AND ADJUDGED:

That the order of the Bankruptcy Court is affirmed in all respects.

5. Put another way, the Court finds that the Bankruptcy Court did not abuse its discretion in concluding that the settlement agreement was in the best interest of the estates.  *See* 73 B.R. at 635.