In re CONDEC, INC., Debtor.

EPIC METALS CORP., Appellant,

v.

CONDEC, INC., Appellee.

No. 98–182–CIV–T–17F.
Bankruptcy No. 95–04374–8P1.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 15, 1998.

---

Michael C. Markham, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for Epic Metals Corp.

Daniel James Herman, Pecarek & Herman, Chartered, Largo, FL, for Condec, Inc.

## ORDER DENYING DEFENDANT–AP-PELLEE'S MOTION TO DISMISS APPEAL AS MOOT

KOVACHEVICH, Chief District Judge.

This cause is before the court on Appellee's Motion to Dismiss Appeal as Moot (Docket No. 10–11). Appellant/Creditor, Epic Metals, Inc., appeals from the Bankruptcy Court's confirmation of Appellee/Debtor's plan of reorganization.

### BACKGROUND

Appellant/Creditor, Epic Metals, Inc. (hereinafter EPIC), is a privately held Pennsylvania corporation licensed to do business in the state of Florida. EPIC manufactures, markets, and distributes various types of composite steel decking which is used as a structural element in concrete pours in the construction of new residential and commercial buildings. Similarly, Appellee/Debtor, Condec, Inc. (hereinafter CONDEC), a bay-area competitor of EPIC's, is a Florida corporation which is also engaged in the business of manufacturing and selling steel decking.

In 1992, EPIC sued CONDEC in the United States District Court for the Middle District of Florida, styled *Epic Metals Corp. v. Condec, Inc. & Frank Souliere, Sr.*, Case No. 92–744–CIV–T–17C, seeking injunctive relief and damages against CONDEC for copyright and trade dress violations under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1998). On April 28, 1995, United States Magistrate Judge Jenkins entered a Memorandum Opinion awarding damages to EPIC in the total amount of $457,131.00.

Shortly after Magistrate Jenkins' opinion was issued, on May 5, 1998, CONDEC filed a Chapter 11 Petition with the Bankruptcy Court. Furthermore, CONDEC also filed an appeal to the Eleventh Circuit Court of Appeals seeking to overturn the $412,000.00 portion of the award that dealt with the alleged "trade dress" infringement.[1] Not long thereafter, the Eleventh Circuit entered its order in favor of CONDEC and vacated the $412,000.00 portion of the damage award that dealt with the "trade dress" infringement claim.

The Bankruptcy case continued to pend for approximately a two year period in which CONDEC filed a Plan of Reorganization and an Amended Plan of Reorganization. During this period, the Bankruptcy Court entered an Order Converting the Case from Chapter 11 to Chapter 7 but subsequently vacated the Order and reinstated the Chapter 11 case after being apprised of the Eleventh Circuit's ruling.

Shortly thereafter, the Bankruptcy Court ordered CONDEC to submit a Third Plan of Reorganization. After denying the two previous proposals, the Bankruptcy Court entered an Order confirming CONDEC's Third Plan of Reorganization on September 29, 1997.

On October 8, 1997, EPIC filed a Notice of Appeal of the Order confirming the Third Plan of Reorganization. At no time did EPIC, nor any other creditor, seek to stay the confirmation order and the subsequent performance of CONDEC. In the approximate seven month period since the Notice of Appeal was filed, CONDEC maintains it has diligently moved forward to meet its obligations under the confirmed plan.

### DISCUSSION

The principal issue here is whether EPIC's appeal is moot and should thereby be dismissed. As this appeal is founded in bankruptcy and the Eleventh Circuit has held that mootness applies to bankruptcy proceedings, *see Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988)(hereinafter *Miami Center*), we now turn to an examination of the mootness doctrine.

The mootness doctrine dictates that only live cases or controversies are to be decided by the courts. *See Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)(explaining that a court's inability to hear a moot case "is a branch of the [U.S. CONST. ART. III] constitutional command that the judicial power extends

---

1. CONDEC did not appeal the $45,000.00 portion of the judgment which was awarded for copyright infringement of Epic's advertising brochures.

only to [live] cases or controversies")(citing *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Within a bankruptcy context, the mootness doctrine recognizes that confirmation plans may have progressed to the point wherein reversal of such plans would be to "knock the props out from under the authorization for every action that has taken place [under the plan]." *Miami Center*, 838 F.2d at 1555 (quoting *In re Information Dialogues*, 662 F.2d 475 (8th Cir. 1981)).

The mootness inquiry begins with an assessment of whether the appellate court can grant effective relief to the party challenging the bankruptcy court's confirmation. *Russo v. Seidler (In re Seidler )*, 44 F.3d 945, 947–48 (11th Cir.1995); *First Union Real Estate Equity and Mortgage Invs. v. Club Assocs., (In re Club Associates )*, 956 F.2d 1065, 1069 (11th Cir.1992); *Miami Center*, 838 F.2d at 1549–54. The test for determining whether such relief is possible is whether the debtor has substantially consummated[2] its reorganization plan to the extent that it becomes legally and practically impossible to unwind that which has already been done. *See In re Seidler*, 44 F.3d at 947–48; *In re Club Assocs.*, 956 F.2d at 1069. The Eleventh Circuit has stated that "[t]he test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." *In re Club Assocs.*, 956 F.2d at 1069 (*citing In re Information Dialogues, Inc.*, 662 F.2d at 477).

Provided the inquiry continues, however, and the appellate court has determined that relief is still available, the focus then shifts to other factors. For example, the court might consider addressing why the appellant has or has not sought a stay pending appeal; for such failure to seek such a stay is generally the reason the court must conduct the substantial consummation analysis discussed above. Courts attribute different weight to the failure to seek a stay and although the failure to obtain such a stay pending appeal *may* result in the appeal being dismissed as moot, *see In re Club Assocs.*, 956 F.2d 1065 (11th Cir.1992); *In re Matos*, 790 F.2d 864 (11th Cir.1986), the failure is not *per se* dispositive and the appellate court will look to the *totality of the circumstances. See In re Club Assocs.*, 956 F.2d at 1070 n. 13; *In re Crystal Oil Co.*, 854 F.2d 79, 82 (5th Cir.1988)(rejecting the notion that a "stay of a bankruptcy court's action is a *per se* requirement for relief on appeal"); *In re AOV Indus.*, 792 F.2d 1140, 1146 (D.C.Cir. 1986); *see also In re American Body Armor & Equip., Inc.*, 172 B.R. 659, 662 (Bankr. M.D.Fla.1994) (holding that "substantial consummation alone is not sufficient to satisfy the mootness inquiry").

In sum, a mootness analysis includes many considerations, both those previously discussed as well as other, more subsidiary questions. Together, these considerations culminate to form a list of factors routinely used to determine mootness. The court must look to the following: (1) a consideration of the interests of finality and the passage of time, (2) whether there has been a comprehensive change in the circumstances, (3) whether a stay has been obtained and if not, why not, (4) whether the debtor's reorganization plan been substantially consummated and if so, what type of transactions have been consummated, (5) the type of relief sought, (6) the effect of granting such relief on third parties not currently before the Court, and (7) the threat to the re-emergence of the debtor as a revitalized entity. *See In re Club Assocs.*, 956 F.2d at 1069 n. 11; *Miami Center*, 838 F.2d at 1547–54; *see also In re American Body Armor & Equip., Inc.*, 172 B.R. at 662–63.

---

**2.** The Bankruptcy Code defines substantial consummation in § 1101 which reads as follows: "In this chapter (2) 'substantial consummation' means (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2) (1998).

## A. Substantial Consummation

█ Turning now to the specifics of this case, an examination of CONDEC's efforts to substantially consummate the plan reveals that CONDEC: (1) has paid the U.S. Trustee's fees, (2) has paid the Class I administrative claims that included an administrative expense to EPIC in the amount of $8,739.04, (3) has made "several" plan periodic payments of $4,000.00 each to the Pinellas County Tax Collector, (4) has issued obligation notes to the Class V General Unsecured Claimants, including EPIC, and (5) has issued a Modification Statement to the United Bank of Pinellas.

Therefore, in light of the above, the chief task presented before this Court is to determine whether these actions taken in furtherance of the plan constitute substantial consummation. Even further, this Court must also ascertain whether EPIC's requested relief is legally and practically possible given CONDEC's actions taken in furtherance of the plan. CONDEC asserts that the reorganization plan has been substantially consummated and that such consummation renders this appeal moot. In support of this contention, CONDEC places great reliance on a line of cases wherein several courts dismissed appeals as moot at the hands of substantial consummation. *See Manges v. Seattle–First Nat'l Bank (In re Manges)*, 29 F.3d 1034 (5th Cir.1994); *In re Club Assocs.*, 956 F.2d at 1069–71; *Sewanee Land, Coal & Cattle, Inc. v. Lamb (In re Sewanee Land)*, 735 F.2d 1294 (11th Cir.1984). This Court is convinced that this reliance is misplaced, for this case presents a unique set of facts[3] that are distinctly different than those cases cited by CONDEC.

In particular, *In re Manges* dealt with the sale of the debtor's assets and the subsequent distribution of the proceeds to the various creditors. *See* 29 F.3d at 1043–44. More specifically, it dealt with the sale of ranch property and attendant mineral rights and the subsequent investment of new funds acquired from such sale, the millions of dollars spent in preparing the property for sale, and the millions of dollars more paid in administration and priority claims to parties who were not before the court. *See id.* It was then quite understandable that the court dismissed the appeal as moot given the undisputed reliance on the plan by third parties. *See id.*

Furthermore, *In re Club Associates* involved a number of investors, not party to the case, who had relied on the plan by committing new funds "with the expectation of receiving a preferred return on their investments." 956 F.2d at 1070. Similarly, the *Miami Center* case dealt with the conveyance of a piece of commercial property worth $250 million that had already been completed at the time the court entertained the motion to dismiss. 838 F.2d at 1548–50. The *Miami Center* case also involved the completed disbursement of monies to unpaid creditors and the dismissal of the suit that the appellants were seeking to reinstate. *See id.* Finally, *In re Sewanee Land* concerned the completed transfer of 2,700 acres of land that the appellant was requesting the court "transfer ... back." 735 F.2d at 1295.

The aforementioned cases conditioned the dismissal of the appeals as being moot on either the presence of third parties who acted in reliance on the plans or on the condition that the actions taken in furtherance of the plans were irrevocably fixed. *See In re*

**3.** Among this unique set of facts is the fact that CONDEC applied for bankruptcy just 7 days after EPIC won a district court judgment in the amount of $457,131.00 for trademark infringement and willful copyright infringement (incidentally, CONDEC appealed and the Eleventh Circuit vacated the judgment to the full extent it had been appealed, i.e., the $412,000.00 damage award for trade dress infringement). As a result of the Chapter 11 filing, however, the Bankruptcy Judge determined that CONDEC's Chapter 11 petition was "nothing more than an attempt to avoid the requirement to post a supersedeas bond pending appeal by using the protection of

the automatic stay imposed by § 362 of the Bankruptcy Code.... The undisputed facts of this record demonstrate that the Debtors sought Chapter 11 relief and obtained the protections of the automatic stay as a litigation tactic to avoid having to satisfy the supersedeas bond otherwise required.... This is clearly not what Chapter 11 was designed for." *See* Order Denying Confirmation of Plans of Reorganization at p. 4–5. This determination of bad faith greatly concerns this Court; however, this determination, while it may be of primary concern on appeal, is not proper subject matter when entertaining a motion to dismiss.

*Manges,* 29 F.3d at 1044; *In re Club Assocs.,* 956 F.2d at 1070; *Miami Center,* 838 F.2d at 1548–49; *In re Sewanee Land,* 735 F.2d at 1295. Here, in stark contrast to the previously discussed cases, CONDEC has paid some taxes and issued some obligation notes, all of which are actions that are capable of being reversed. Even still, to date, CONDEC has yet to even pay out any monies under the notes.[4] The act of *issuing* an obligation note, in contradistinction to the fulfillment of payment under that note's terms, does not in and of itself create any rights or privileges upon which a reasonable creditor might use to justify actions of the "irrevocably fixed" type, nor does it convey any rights or privileges that cannot be reasonably subject to deferral.

█ In sum, this Court is not convinced that the issuance of obligation notes qualifies as the basis for a finding of substantial consummation. However, even if this Court was satisfied that CONDEC's actions qualify as a substantial consummation of its plan, several courts have held that despite such a finding, it is still not " impossible or inequitable" for a court to grant appellate relief. *See In re Manges,* 29 F.3d at 1042–43 (citing *In re AOV Indus., Inc.,* 792 F.2d 1140, 1148 (D.C.Cir.1986)). Moreover, the Eleventh Circuit has stated that "[e]ven if substantial consummation has occurred, a court must still consider all the circumstances of the case to decide whether it can grant effective [appellate] relief." *In re Club Assocs.,* 956 F.2d at 1069.

## B. The Absence of A Stay Pending Appeal

█ CONDEC places great emphasis on the failure of EPIC to obtain a stay of the proceedings. Although such failures to obtain stays are sometimes fatal to an appeal, the cases in which this is true are those cases wherein the court refuses to compromise the integrity of those actions taken by others in reliance on the plan. *See, e.g., In re Manges,* 29 F.3d at 1034; *In re Club Assocs.,* 956 F.2d at 1070 n. 13 (maintaining that "[d]espite the appearance that a failure to obtain a stay is a blanket discharge of an appellate court's duty to review a bankruptcy court's confirmation order, the fact remains that the absence of a stay does not *compel* a finding of mootness *in all cases* ").

As previously discussed, CONDEC's principal actions in pursuing the consummation of its reorganization plan are: the issuance of obligation notes (for payments to begin at the end of October 1998), the payments made to the tax collector and the U.S. Trustee, and a payment in the form of an administration expense to EPIC. Given the likelihood that the taxes and the administration expenses are likely to remain untouched should EPIC prevail on appeal, and because of the lack of any third parties acting in reliance on these actions, this Court cannot allow the absence of a stay to override the available appellate relief this Court may still administer.

Furthermore, this Court is mindful that it is necessary to consider the "proposed relief's 'potential impact on the reorganization scheme as a whole,' including whether the relief will 'implicate or have an adverse effect on the interests of other, non-party creditors.' " *In re AOV Indus.,* 792 F.2d at 1140. This Court believes that should EPIC prevail on appeal, the interests of other creditors will remain unaffected, for EPIC even conceded that the reason it failed to seek a stay was because it was not concerned with CONDEC's "insignificant" relationships with other parties. *See* EPIC's Memorandum In Opposition To Dismiss Appeal As Moot.

## C. The Reorganization Plan Itself

The Eleventh Circuit directly addressed reorganization plans in *Miami Center* wherein the Court stated that "[w]ithin the penumbra of the reorganization plan ... there may be aspects of the reorganization that are not moot." *Miami Center,* 838 F.2d at 1554. The Eleventh Circuit further added that "[t]he possibility for relief for matters unrelated to consummated sales does not, however, subsume the central principle that finality of judgments and certainty are to be protected where there have been sales to good faith purchasers." *Miami Center,* 838 F.2d at 1555 n. 7. Thus, the Eleventh Circuit, while paying tribute to such concerns as finality

---

**4.** Payments are to begin in late October, 1998.

and the passage of time, framed such concerns as being dependent on, and achieving their significance from, the presence of good faith purchasers. And, as previously stated, this case lacks any such involvement.

Yet another case highlights the reason this case presented before us today is exceptional. As noted earlier, CONDEC's reorganization plan is relatively unencumbered by the usual complexities found in bankruptcy reorganization plans, and as such, is distinguished from the plan discussed in *In re Roberts Farms*, 652 F.2d 793 (9th Cir.1981). There, the court asserted that the reorganization plan was so "intricate and involved" that to reverse any part of the plan "would do nothing other than create an unmanageable, uncontrolled situation for the bankruptcy court." *Id.* at 797. As distinguished from *In re Roberts Farms*, this case presently before this Court and the appellate relief requested does not mandate, should EPIC prevail on appeal, that we partake in a "piece-meal dismantling" of the plan. *Miami Center*, 838 F.2d at 1555.

### CONCLUSION

In closing, this Court realizes and acknowledges the important policy of the need for finality in bankruptcy court-approved confirmation orders. However, and admittedly this determination requires a case-by-case adjudication, this Court finds that it would be inequitable to dismiss this appeal given the unique set of circumstances surrounding this case, the determination that judicial relief is still available, the noticeable lack of any third parties acting in reliance on the plan, and the finding that CONDEC has not substantially consummated its plan.

Moreover, this Court finds that the "competing interest" of the appellant's right "to seek review of a bankruptcy order adversely affecting him" outweighs the need for finality and dismissal. *In re Club Assocs.*, 956 F.2d at 1069. Because this Court finds that judicial relief is still available, and that this appeal does not fail for mootness, this appeal continues to be justiciable. Accordingly, it is **ORDERED** that Appellee's Motion to Dismiss Appeal as Moot (Docket No. 10–11) be **DENIED**. It is further **ORDERED** that the

Defendant–Appellee submit a reply brief within fifteen (15) days of this order.